THE STATE OF OHIO, APPELLEE, *v.* D.H., APPELLANT.

[Cite as *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9.]

(Nos. 2007–0291 and 2007–0472—Submitted January
9, 2008—Decided January 8, 2009.)

——————

——————

PFEIFER, J.

### Factual and Procedural Background

{¶ 1} On December 28, 2004, D.H., a juvenile, fired a gun into a melee outside his friend Christopher Harris's home. Harris was involved in a fight in his front yard, and other youths were also involved in the fracas or were watching. A bullet struck and killed Harris's sister, Kiera. Preston Smith was shot in the leg.

Another person at the fight, Brandon Russell, later discovered bullet holes in his clothing.

{¶ 2} D.H. was indicted on two counts of murder with a firearm specification in violation of R.C. 2903.02(A) and 2941.145, two counts of attempted murder with firearm specifications in violation of R.C. 2923.02 as it relates to R.C. 2903.02 and 2941.145, and two counts of felonious assault with firearm specifications in violation of R.C. 2903.11 and 2941.145. Each count alleged that D.H., being 15 years old at the time of the offenses and using a firearm, was subject to a serious-youthful-offender disposition pursuant to R.C. 2152.11 and 2152.13. A serious-youthful-offender disposition consists of a "blended" sentence: a traditional juvenile disposition and a stayed adult sentence. R.C. 2152.13(D)(2). The court may enforce the adult portion of the sentence at a later time if the juvenile commits certain acts that indicate that the juvenile disposition has been unsuccessful in rehabilitating him. R.C. 2152.14.

{¶ 3} A juvenile who is tried as a serious youthful offender is entitled to a jury trial pursuant to R.C. 2152.13(C)(1); D.H. availed himself of that right. The jury determined that D.H. was a delinquent minor child for committing the offense of reckless homicide, a third-degree felony, as a lesser included offense of murder and felony murder. R.C. 2903.041. The jury further found that D.H. was 15 years old at the time of the offense and that he had a "firearm on or about his person or under his control and did * * * display, * * * brandish, indicate he possessed and/or used the firearm in the commission of the offense." Those findings made D.H. eligible for a serious-youthful-offender disposition—i.e., a blended sentence, pursuant to R.C. 2152.11(A)(2) and (F)(2) and R.C. 2152.13.

{¶ 4} Because of D.H.'s age and the nature of his crime, the imposition of the adult portion of the sentence was discretionary, rather than mandatory. R.C. 2152.11(F)(2). On February 8, 2006, the juvenile court held a sentencing hearing to determine whether to impose a blended sentence. The court stated on the record:

{¶ 5} "I have the discretion to order a blended sentence on this reckless homicide because a firearm was used and the law requires me to use graduated actions and services to provide for the protection, care and mental and physical development of the child involved in this case. That is just part of the juvenile [serious-youthful-offender] statute. And I need to consider the circumstances and facts, the juvenile's history, the length of time level and juvenile history, and any adult sentence would be stayed or suspended pending any juvenile disposition.

{¶ 6} " * * * [Appellant] didn't have any real problems before this incident. He had no school suspensions, no drug or alcohol abuse, no prior mental treatment, no psychosis, according to the psychologist.

{¶ 7} " * * *

{¶ 8} "For the felony, I can sentence him to a minimum of one to five years on the felony. The underlying felony and the underlying gun specification, three years. So the total could be four to eight years. And then of course I have to jump the bridge of what [D.H.'s trial counsel] wants, which is not to impose the serious youthful offender portion of the sentence at all, because it's now discretionary based on what the verdict was after the jury trial.

{¶ 9} "But one of the big factors is the seriousness of the offense. And * * * a firearm was used, and a little girl died. That is a big factor in the case.

{¶ 10} "* * * [B]ecause of the seriousness of this incident, I find that * * * the disposition should be that a serious youthful offender blended sentence should occur. It doesn't necessarily mean that [D.H.] will never serve the adult portion of his sentence, but it will be hanging over his head, which I think in itself is a deterrent to any future potential crime that he might be involved in."

{¶ 11} As for the juvenile disposition, the juvenile court committed appellant to the legal custody of the Department of Youth Services for three years on the gun specification, to be followed by a minimum term of six months to a maximum period not to exceed D.H.'s 21st birthday on the reckless-homicide charge. As for the adult sentence, the court imposed a single three-year prison sentence for appellant's reckless homicide, which is above the one-year, statutory-minimum prison sentence for such felonies. R.C. 2929.14(A)(3). The court imposed an additional three-year prison sentence on the accompanying firearm specifications. Pursuant to R.C. 2152.13(D)(2)(a)(iii), the court placed a mandatory stay upon the adult portion of the sentence pending D.H.'s successful completion of the juvenile disposition.

{¶ 12} D.H. appealed to the Franklin County Court of Appeals. He asserted that the trial court had erred "when it imposed an adult sentence upon the defendant by making predicate findings that were constitutionally improper for the court to make under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470." *State v. D.H.*, 169 Ohio App.3d 798, 2006-Ohio-6953, 865 N.E.2d 90, ¶ 27. D.H. argued that only a jury can make the factual determinations required under R.C. 2152.13(D)(2)(a)(i) that lead to the discretionary imposition of an adult sentence.

{¶ 13} The appellate court affirmed the trial court, holding, "[T]he juvenile court did not make the R.C. 2152.13(D)(2)(a) findings in violation of appellant's constitutional jury-trial rights articulated under the Sixth Amendment to the

United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution, or in contravention of *Blakely* [*v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403] and *Foster*." *D.H.*, 169 Ohio App.3d 798, 2006-Ohio-6953, 865 N.E.2d 90, ¶ 67. D.H. appeals that decision.

{¶ 14} Further, the appellate court rejected D.H.'s assertion that the trial court had overstepped its constitutional bounds by imposing more than the minimum sentence in the adult portion of the sentence. On D.H.'s motion, the appellate court held that that aspect of its decision conflicted with the decision of the Third District Court of Appeals in *In re Hill*, Allen App. No. 1–05–65, 2006-Ohio-2504, 2006 WL 1381643. In *Hill*, the juvenile argued that the adult portion of his sentence was contrary to law since the trial court could not make the factual findings to impose more than the minimum sentence. The court held in *Hill*, "Since Hill was sentenced to more than the minimum and consecutive sentences under statutes found unconstitutional by the Ohio Supreme Court, we must vacate the sentence and remand this case to the trial court for further proceedings consistent with *Foster*." Id. at ¶ 21. The court below certified the following conflict:

{¶ 15} "Do constitutional jury trial rights, as articulated under the Sixth Amendment to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution, and as applied to an adult felony sentencing in accordance with *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856 [845 N.E.2d 470], and *Blakely v. Washington* (2004), 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403], also apply, in a pre-*Foster* sentencing, to findings that a juvenile court has made under Ohio's adult felony sentencing statutes when the juvenile court imposed the adult portion of a blended juvenile/adult sentence under R.C. 2152.13 of Ohio's serious youthful offender statutes?" *State v. D.H.*, 113 Ohio St.3d 1486, 2007-Ohio-1986, 865 N.E.2d 911.

{¶ 16} The cause is before this court upon the acceptance of a discretionary appeal and upon the certification of a conflict.

### Law and Analysis

{¶ 17} We decide today whether this court's decision in *Foster* implicates Ohio's juvenile blended-sentencing statutes. We hold that R.C. 2152.13(D)(2)(a)(i), which requires a juvenile court judge to consider certain factors before imposing a serious-youthful-offender dispositional sentence, does not violate the Sixth Amendment to the United States Constitution or Sections 5 and 10, Article I of the Ohio Constitution. Further, we hold that constitutional jury trial rights do not apply, in a pre-*Foster* sentencing, to findings that a juvenile court has made under Ohio's adult felony sentencing statutes when the juvenile court imposed the adult portion of a serious-youthful-offender dispositional sentence pursuant to R.C. 2152.13.

### The Statutory Scheme

{¶ 18} A juvenile charged as a potential serious youthful offender does not face bindover to an adult court; the case remains in the juvenile court. Under R.C. 2152.11(A), a juvenile defendant who commits certain acts is eligible for "a more restrictive disposition." That "more restricted disposition" is a "serious youthful offender" disposition and includes what is known as a blended sentence—a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. The adult sentence remains stayed unless the juvenile fails to successfully complete his or her traditional juvenile disposition. R.C. 2152.13(D)(2)(a)(iii). Theoretically, the threat of the imposition of an adult sentence encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick.

{¶ 19} R.C. 2152.11 sets forth what acts are considered "enhanced," the commission of which can lead to a blended sentence:

{¶ 20} "(A) * * * If the complaint, indictment, or information charging the act includes one or more of the following factors, the act is considered to be enhanced, and the child is eligible for a more restrictive disposition under this section;

{¶ 21} "(1) The act charged against the child would be an offense of violence if committed by an adult.

{¶ 22} "(2) During the commission of the act charged, the child used a firearm, displayed a firearm, brandished a firearm, or indicated that the child possessed a firearm and actually possessed a firearm.

{¶ 23} "(3) The child previously was admitted to a department of youth services facility for the commission of an act that would have been aggravated murder, murder, a felony of the first or second degree if committed by an adult, or an act that would have been a felony of the third degree and an offense of violence if committed by an adult."

{¶ 24} R.C. 2152.11(B) through (G) set forth the combination of factors— including the age of the juvenile and the seriousness of his offense—that determine whether the juvenile will face a traditional juvenile disposition, a mandatory serious-youthful-offender disposition, or a discretionary serious-youthful-offender disposition. In this case, pursuant to R.C. 2152.11(F)(2), the combination of D.H.'s offense and age left the juvenile court with the discretion to impose a blended sentence.

{¶ 25} R.C. 2152.13(D)(2)(a)(i) sets forth the factors a juvenile court must consider before imposing a discretionary blended sentence. Basically, if the court finds that a juvenile disposition alone would be inadequate to meet the

statutorily enunciated purposes of juvenile disposition, the court may impose an adult sentence, albeit stayed, on the child:

{¶ 26} "If the juvenile court on the record makes a finding that, given the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met, the juvenile court may impose upon the child a sentence available for the violation, as if the child were an adult, under Chapter 2929. of the Revised Code, except that the juvenile court shall not impose on the child a sentence of death or life imprisonment without parole."

{¶ 27} R.C. 2152.13(D)(2)(a)(i) refers to R.C. 2152.01, which establishes the purposes of any juvenile disposition:

{¶ 28} "(A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services."

{¶ 29} Leaving the considerations set forth in R.C. 2152.13(D)(2)(a)(i) to the court's determination, D.H. argues, violates his jury rights under *Foster*.

{¶ 30} Any adult sentence that the trial court imposes through R.C. 2152.13(D)(2)(a)(i) is only a potential sentence—it is stayed pursuant to R.C. 2152.13(D)(2)(a)(iii) "pending the successful completion of the traditional juvenile dispositions imposed." R.C. 2152.13(D)(2)(a)(ii) requires the court to impose a juvenile disposition when it imposes an adult sentence; how the juvenile responds to that disposition will determine whether the stay is lifted on the adult sentence.

{¶ 31} R.C. 2152.14(E) governs under what instances a juvenile court may invoke the adult portion of a serious youthful offender's sentence for failure to successfully complete the traditional juvenile disposition. The statute requires a finding by clear and convincing evidence that the juvenile is "unlikely to be rehabilitated during the remaining period of juvenile jurisdiction" and that the juvenile has engaged in further bad conduct pursuant to R.C. 2512.14(A) or (B). R.C. 2512.14(E) reads:

{¶ 32} "(E)(1) The juvenile court may invoke the adult portion of a person's serious youthful offender dispositional sentence if the juvenile court finds all of the following on the record by clear and convincing evidence:

{¶ 33} "(a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.

{¶ 34} "(b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.

{¶ 35} "(c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction."

{¶ 36} The conduct that can result in the enforcement of an adult sentence includes committing, while in custody or on parole, an act that is a violation of the rules of the institution or the conditions of supervision and that could be charged as any felony or as a first-degree misdemeanor offense of violence if committed by an adult, R.C. 2152.14(A)(2)(a) and (B)(1), or engaging in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim. R.C. 2152.14(A)(2)(b) and (B)(2).

{¶ 37} Pursuant to R.C. 2152.14(D), the court may not invoke the adult sentence without another hearing, and the juvenile has the right to counsel and to present evidence on his behalf. In fact, the right to counsel cannot be waived. Id. Furthermore, the adult portion of the sentence invoked as a result of the evidence may be more lenient, though not more severe, than the original stayed sentence. R.C. 2152.14(E)(2). Since the adult portion of D.H.'s sentence has not been invoked, this opinion does not address the constitutional ramifications of invoking the adult sentence under R.C. 2152.14 in light of *Blakely* and *Foster*.

{¶ 38} The statutory scheme establishes that a juvenile subject to serious-youthful-offender status, despite the carrot/stick of the possible imposition of an adult sentence, remains squarely in the juvenile court system. The juvenile cannot be sent directly to an adult facility for the acts that led to his serious-youthful-offender status. The juvenile court retains jurisdiction. The juvenile would have to engage in separate conduct detrimental to his own rehabilitation in the juvenile system to be committed to an adult facility. The aims of the juvenile system—and its heightened goals of rehabilitation and treatment—control his disposition. To get the rehabilitative benefit of the juvenile system, the juvenile's case must remain in juvenile court.

{¶ 39} We therefore next address what jury trial rights a juvenile has in a juvenile proceeding.

### Juvenile Courts, the Sixth Amendment, and Due Process

{¶ 40} Juvenile courts "occupy a unique place in our legal system." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65. In *In re C.S.*, this court traced the development of juvenile courts from beneficent entities that "eschewed traditional, objective criminal standards and retributive notions of

justice" and focused on the state's role as parens patriae, to the more modern version, which can impose penalties that have serious implications on a child's personal liberty. Id. at ¶ 66. But with the imposition of significant penalties by juvenile courts has come "increasing recognition of due process rights and constitutional scrutiny of police action." Id. at ¶ 69.

{¶ 41} This court has held that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings." *State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26. Nevertheless, "the Constitution does not mandate elimination of all differences in the treatment of juveniles." *Schall v. Martin* (1984), 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207.

{¶ 42} For purposes of this case, an important difference remains. In *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647, the United States Supreme Court held in a plurality opinion that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." In *In re Agler* (1969), 19 Ohio St.2d 70, 77–78, 48 O.O.2d 85, 249 N.E.2d 808, this court, too, held that "indictment or trial by jury are not requisite in delinquency proceedings, either as matters of constitutional guarantees or sound public policy."

{¶ 43} We note that because D.H. faces the potential imposition of an adult sentence, his case differs in an important respect from the cases of the juveniles in *McKeiver* and *Agler* and thus merits separate consideration.

{¶ 44} Constitutional procedural safeguards in the juvenile context find their genesis in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. If D.H. is to find relief, it must be through the Due Process Clause.

{¶ 45} In *C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 79, this court noted that the Supreme Court's jurisprudence "make[s] clear that the right to counsel in a juvenile case flows to the juvenile through the Due Process Clause of the Fourteenth Amendment, not the Sixth Amendment. *In re Gault* (1967), 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527. And although modern juvenile proceedings share some indicia of the criminal courts, juvenile proceedings are not considered criminal prosecutions for purposes of Sixth Amendment analyses. *McKeiver,* 403 U.S. at 553, 91 S.Ct. 1976, 29 L.Ed.2d 647."

{¶ 46} In *McKeiver,* the court considered the case through the prism of Due Process: "[A]ccepting 'the proposition that the Due Process Clause has a role to play,' *Gault,* 387 U.S., at 13, 87 S.Ct. at 1436 [18 L.Ed.2d 527], our task here with respect to trial by jury, as it was in *Gault* with respect to other claimed rights, 'is to ascertain the precise impact of the due process requirement.' Id., at 13–14, 87

S.Ct., at 1436 [18 L.Ed.2d 527]." *McKeiver*, 403 U.S. at 541, 91 S.Ct. 1976, 29 L.Ed.2d 647. We face the same task in this case.

{¶ 47} The court addressed the role of the Due Process Clause in juvenile proceedings in *Schall*, 467 U.S. at 263, 104 S.Ct. 2403, 81 L.Ed.2d 207:

{¶ 48} "There is no doubt that the Due Process Clause is applicable in juvenile proceedings. 'The problem,' we have stressed, 'is to ascertain the precise impact of the due process requirement upon such proceedings.' *In re Gault*, 387 U.S. 1, 13–14, 87 S.Ct. 1428, 1436–1437, 18 L.Ed.2d 527 (1967). We have held that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles. See Id., at 31–57, 87 S.Ct., at 1445–1459 [18 L.Ed.2d 527] (notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy)."

{¶ 49} Because of the state's stake in the rehabilitation of the juvenile offender and the theoretically paternal role that the state continues to play in juvenile justice, a balanced approach is necessary to preserve the special nature of the juvenile process while protecting procedural fairness:

{¶ 50} "The State has 'a parens patriae interest in preserving and promoting the welfare of the child,' *Santosky v. Kramer*, 455 U.S. 745, 766, 102 S.Ct. 1388, 1401, 71 L.Ed.2d 599 (1982), which makes a juvenile proceeding fundamentally different from an adult criminal trial. We have tried, therefore, to strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, *In re Winship*, supra, 397 U.S., at 366, 90 S.Ct., at 1073 [25 L.Ed.2d 368], and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause. *Breed v. Jones*, supra, 421 U.S., at 531, 95 S.Ct., at 1786 [44 L.Ed.2d 346]; *McKeiver*, supra, 403 U.S., at 543, 91 S.Ct., at 1985, [29 L.Ed.2d 647] (plurality opinion)." Id.

{¶ 51} The standard as to whether due process requirements are met is inexact. In *C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 80, this court held that fundamental fairness is the overarching concern:

{¶ 52} "Because the juvenile's right to counsel is predicated on due process, it is malleable rather than rigid. As the Supreme Court has explained, 'For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. * * * [D]ue process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria [ & Restaurant ] Workers [Union ] v. McElroy* [1961], 367 U.S. 886, 895 [81 S.Ct. 1743, 6 L.Ed.2d 1230]. Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must

discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.' *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina* (1981), 452 U.S. 18, 24–25, 101 S.Ct. 2153, 68 L.Ed.2d 640."

{¶ 53} We therefore consider whether Ohio's juvenile blended-sentencing scheme for juveniles meets the requirement of fundamental fairness.

## Due Process and Serious–Youthful–Offender Status

{¶ 54} Juvenile courts are unique and are tied to the goal of rehabilitation. The contrast between the purposes of juvenile sentencing and criminal sentencing is illustrative. R.C. 2152.01(A) states that the overriding purposes for juvenile dispositions "are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." The purposes of felony sentencing, on the other hand, "are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). In *Agler*, this court stated that "the decided emphasis [of juvenile courts] should be upon individual, corrective treatment." *Agler*, 19 Ohio St.2d at 72, 48 O.O.2d 85, 249 N.E.2d 808.

{¶ 55} This state is committed to the mission of juvenile courts and should be open to innovation that may help the system reach its important objectives. Early data indicate that the type of blended-sentencing system employed by Ohio has worked well in Minnesota. Randi–Lynn Smallheer, Sentence Blending and the Promise of Rehabilitation: Bringing the Juvenile Justice System Full Circle (1999), 28 Hofstra L.Rev. 259, 285. Yet any innovation must meet the test of due process. We conclude that the Ohio statutes addressing discretionary serious-youthful-offender disposition do not offend due process.

{¶ 56} Should a juvenile exercise his right to a jury under R.C. 2152.13(C)(1), that jury will determine whether the juvenile did, in fact, commit the acts he is accused of. The determination of guilt—whether the defendant committed these acts—is little different from a jury's determination in a case involving an adult tried in a criminal court. The General Assembly has decided that a juvenile deserves a jury in that fact-finding role. Ohio, in that regard, has accepted the Supreme Court's invitation in *McKeiver* to grant juveniles some jury rights in the adjudicative process:

{¶ 57} "If, in its wisdom, any State feels the jury trial is desirable in all cases, or in certain kinds, there appears to be no impediment to its installing a system embracing that feature. That, however, is the State's privilege and not its obligation." *McKeiver*, 403 U.S. at 547, 91 S.Ct. 1976, 29 L.Ed.2d 647.

{¶ 58} The jury plays an important role in the adjudicative portion of Ohio's serious-youthful-offender disposition statutory scheme. Only the jury's factual determination makes the juvenile defendant eligible for a disposition that might include a stayed adult sentence.

{¶ 59} Despite the jury's role in the adjudicative phase, removing the jury from the dispositional process does not violate due process. The court's dispositional role is at the heart of the remaining differences between juvenile and adult courts. It is there that the expertise of a juvenile judge is necessary. The judge, given the factors set forth in R.C. 2152.13(D)(2)(a)(i), must assess the strengths and weaknesses of the juvenile system vis-à-vis a particular child to determine how this particular juvenile fits within the system and whether the system is equipped to deal with the child successfully. That assessment requires as much familiarity with the juvenile justice system as it does familiarity with the facts of the case. To leave that determination to an expert, given the juvenile system's goal of rehabilitation, does not offend fundamental fairness, especially since the adult portion of the blended sentence that the judge imposes upon a jury verdict is not immediately, and may never be, enforced.

{¶ 60} We need not transform juvenile proceedings into full-blown adult trials and dispositions to preserve a juvenile's due process rights. As the court related in *McKeiver*, "If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." *McKeiver*, 403 U.S. at 551, 91 S.Ct. 1976, 29 L.Ed.2d 647.

## Conclusion

{¶ 61} The constitutional test to be applied in regard to whether a statute violates a juvenile's jury trial rights is whether the statute meets the requirements of due process and fundamental fairness. We hold that due process does not require a jury determination on the imposition of a serious-youthful-offender dispositional sentence under R.C. 2152.13, including the determination of the stayed, adult portion of the sentence. Accordingly, we affirm the judgment of the court below.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CARR, JJ., concur.

LANZINGER, J., concurs in judgment only.

DONNA J. CARR, J., of the Ninth Appellate District, sitting for CUPP, J.

Ron O'Brien, Franklin County Prosecuting Attorney, and Katherine J. Press, Assistant Prosecuting Attorney, for appellee.

Yeura R. Venters, Franklin County Public Defender, and John W. Keeling and Rebecca S. Steele, Staff Attorneys, for appellant.

Katherine Hunt Federle, urging reversal for amicus curiae Justice for Children Project.

Timothy Young, Ohio Public Defender, and Jill E. Beeler and Molly J. Bruns, Assistant Public Defenders, urging reversal for amicus curiae Ohio Public Defender.

Nancy Hardin Rogers, Attorney General, Benjamin C. Mizer, State Solicitor, Elise Porter, Assistant Attorney General, and Eric A. Baum, Assistant Solicitor, urging affirmance for amicus curiae Ohio Attorney General.