IN RE J.V.

**[Cite as *In re J.V.,* 134 Ohio St.3d 1, 2012-Ohio-4961.]**

*Juvenile offenders—Invocation of adult portion of blended sentence—R.C.*
*2152.14(E)—Judicial fact-finding constitutional—Standard of proof.*

(No. 2011-0107—Submitted December 7, 2011—Decided October 30, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 94820, 2010-Ohio-5490.

_____

**PFEIFER, J.**

**Factual and Procedural Background**

{¶ 1} In June 2005, pursuant to a plea agreement**,** the trial court found juvenile appellant J.V. delinquent and guilty of one count of felonious assault, one count of aggravated robbery, and the attendant firearm and serious-youthful-offender specifications. The court imposed a blended sentence: at least two years of incarceration at the Ohio Department of Youth Services ("ODYS") and a stayed adult sentence of three years. Several legal challenges that are immaterial here were filed while J.V. was incarcerated. Near the end of his sentence at ODYS, J.V. was involved in a fight that led the trial court to invoke the theretofore stayed adult sentence.

{¶ 2} On appeal, the court of appeals affirmed the invocation of the stayed adult sentence. We accepted J.V.'s discretionary appeal, which presents two propositions of law. The first proposition of law states, "The invocation of an adult prison sentence upon a juvenile, pursuant to R.C. 2152.14, violates the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution." We conclude to the contrary that the invocation of the adult prison sentence was constitutional. The second

proposition of law states, "A juvenile court does not have the authority to impose criminal punishment (including post-release control) after the delinquent child turns 21." We agree and reverse that portion of the court of appeals decision.

**Law and Analysis**

*Standard of Review*

**{¶ 3}** Because both propositions of law involve only questions of law, our review is de novo. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 13.

*I. Constitutionality of Invocation Provisions of R.C. Chapter 2152*

**{¶ 4}** R.C. Chapter 2152 is a relatively recent enactment of the General Assembly that became law on January 1, 2002. "The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). We have addressed R.C. 2152.14, which allows for the invocation of the adult portion of a dispositional sentence, three times. *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209; *In re M.P.*; and *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. But we have not addressed the constitutionality of the invocation provisions of R.C. 2152.14 in these cases. Our summary of R.C. 2152.14 in *D.H.* provides background to our analysis in this case:

> R.C. 2152.14(E) governs under what instances a juvenile court may invoke the adult portion of a serious youthful offender's sentence for failure to successfully complete the traditional juvenile disposition. The statute requires a finding by clear and convincing evidence that the juvenile is "unlikely to be rehabilitated during the remaining period of juvenile jurisdiction"

and that the juvenile has engaged in further bad conduct pursuant to R.C. 2512.14(A) or (B) [sic, 2152.14]. R.C. 2512.14(E) [sic] reads:

"(E)(1) The juvenile court may invoke the adult portion of a person's serious youthful offender dispositional sentence if the juvenile court finds all of the following on the record by clear and convincing evidence:

"(a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.

"(b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.

"(c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction."

The conduct that can result in the enforcement of an adult sentence includes committing, while in custody or on parole, an act that is a violation of the rules of the institution or the conditions of supervision and that could be charged as any felony or as a first-degree misdemeanor offense of violence if committed by an adult, R.C. 2152.14(A)(2)(a) and (B)(1), or engaging in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim. R.C. 2152.14(A)(2)(b) and (B)(2).

Pursuant to R.C. 2152.14(D), the court may not invoke the adult sentence without another hearing, and the juvenile has the right to counsel and to present evidence on his behalf. In fact, the right to counsel cannot be waived. Id. Furthermore, the adult

3

portion of the sentence invoked as a result of the evidence may be more lenient, though not more severe, than the original stayed sentence. R.C. 2152.14(E)(2). Since the adult portion of D.H.'s sentence has not been invoked, this opinion does not address the constitutional ramifications of invoking the adult sentence under R.C. 2152.14 in light of *Blakely* [*v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)] and [*State v.*] *Foster* [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470].

The statutory scheme establishes that a juvenile subject to serious-youthful-offender status, despite the carrot/stick of the possible imposition of an adult sentence, remains squarely in the juvenile court system. The juvenile cannot be sent directly to an adult facility for the acts that led to his serious-youthful-offender status. The juvenile court retains jurisdiction. The juvenile would have to engage in separate conduct detrimental to his own rehabilitation in the juvenile system to be committed to an adult facility. The aims of the juvenile system—and its heightened goals of rehabilitation and treatment—control his disposition. To get the rehabilitative benefit of the juvenile system, the juvenile's case must remain in juvenile court.

*D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 31–38.

{¶ 5} With that background, it is clear that the issues before us have not been addressed. In this case, J.V.'s stayed sentence has been invoked, and he has challenged the constitutionality of two aspects of the invocation provisions of R.C. 2152.14, which were specifically not addressed in *D.H.* First, J.V. argues that the judicial fact-finding necessary to invoke the stayed adult sentence violates J.V.'s right to a trial by jury. Second, J.V. argues that the burden of proof should

be the heightened "beyond a reasonable doubt" standard of criminal trials rather than the lesser "clear and convincing" standard of R.C. 2152.14(E)(1). Unlike *D.H.,* which did not require us to "address the constitutional ramifications of invoking the adult sentence under R.C. 2152.14 in light of *Blakely* and *Foster*," today we squarely address these constitutional challenges. *D.H.* at ¶ 37.

### Judicial Fact-finding

{¶ 6} J.V. argues that R.C. 2152.14(E) violates his right to a trial by jury by allowing the judge to substitute his own judgment as to certain factual findings for a jury's. J.V. relies on *Apprendi v. Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which states, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

{¶ 7} We conclude that the *Apprendi* line of cases is not even in play, because the juvenile court did not increase the penalty that J.V. was subject to. *Apprendi* does not prohibit all judicial fact-finding; it prohibits only that which increases the penalty beyond the statutory maximum. *Id.* The "statutory maximum" is the maximum sentence "allowed by the jury verdict or by the defendant's admissions at a plea hearing." *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 7.

{¶ 8} In this case, based on delinquency admissions, J.V. was sentenced to a blended sentence. The adult portion of the sentence was stayed, "pending the successful completion of the traditional juvenile disposition." R.C. 2152.13(D)(1)(c). When the juvenile court invoked the stayed sentence because J.V. did not successfully complete his juvenile disposition, the judge did not increase J.V.'s sentence; he merely removed the stay. The sentence had already been imposed.

{¶ 9} As we have explained, R.C. 2152.14 does not require the stay to be lifted, and it allows the juvenile court to impose a lesser sentence than the stayed

sentence when the adult portion of a stayed disposition is invoked. In *In re C.P.*, we stated:

> Once the request is filed, the adult portion of the sentence cannot be invoked without a public hearing. R.C. 2152.14(D). The juvenile has a right to counsel that may not be waived and the right to present evidence on his own behalf, "including evidence that [he] has a mental illness or is a mentally retarded person." *Id.* If the person submits evidence that he has a mental illness or is mentally retarded, the court must consider that evidence in determining whether to invoke the adult portion of the SYO [serious youthful offender] dispositional sentence.
>
> Further, pursuant to R.C. 2152.14(E)(1), the court must find by clear and convincing evidence not only that the person serving the juvenile portion of an SYO dispositional sentence engaged in the conduct—the additional bad act—he is accused of, but also that the conduct "demonstrates that [he] is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction." And under R.C. 2152.14(E)(2), the juvenile court has the discretion to "modify the adult sentence the court invokes to consist of any lesser prison term that could be imposed for the offense."
>
> Thus, for the bulk of Ohio's SYO scheme, the juvenile court retains discretion to deal individually with juvenile offenders, and procedural protections are in place before adult punishment can be invoked. Even after additional bad acts by a juvenile, the judge has the discretion not to invoke the adult sentence, or to lessen the one imposed at the time of the juvenile disposition.

*In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 80-82.

{¶ 10} Even if the adult portion of the disposition is "only a potential sentence," the fact remains that J.V. had been sentenced, and the juvenile court merely removed the stay of that sentence. *D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 30. In doing so, the juvenile court followed the procedure prescribed in R.C. 2152.14. And, most important for present purposes, the juvenile court did not increase a sentence that had been previously imposed. Based on this factual distinction, *Apprendi*, *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, are not implicated.

{¶ 11} Furthermore, juveniles do not enjoy a right to a trial by jury. In *In re Agler*, 19 Ohio St.2d 70, 249 N.E.2d 808 (1969), paragraph two of the syllabus, we stated:

> Delinquency proceedings in Juvenile Court do not require indictment or trial by jury under the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States or under Sections 5 and 10 of Article I of the Constitution of Ohio.

{¶ 12} This is not to say that juries play no role. In *D.H.*, we stated that juries have an "important role in the adjudicative portion of Ohio's serious-youthful-offender disposition statutory scheme." *In re D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 58. But juries are not required, and

> removing the jury from the dispositional process does not violate due process. The court's dispositional role is at the heart of the

remaining differences between juvenile and adult courts. It is there
that the expertise of a juvenile judge is necessary.

*Id*. at ¶ 59.

{¶ 13} There is no question that the statutory scheme allows, indeed requires, juvenile courts to make factual determinations before invoking the stayed adult portion of a blended sentence. We conclude that when an invocation hearing is properly conducted pursuant to R.C. 2152.14, as in this case, the juvenile's right to a trial by jury is not even implicated, let alone violated.

*Burden of Proof—Clear and Convincing Evidence*

{¶ 14} As explained above, juveniles are not entitled to full constitutional protections during delinquency proceedings. Nevertheless, the United States Supreme Court has stated that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). At a minimum, juveniles are entitled to proceedings that "measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

{¶ 15} Because of the state's "*parens patriae* interest in preserving and promoting the welfare of the child," *Santosky v. Kramer*, 455 U.S. 745, 766, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), juvenile proceedings are fundamentally different from adult criminal trials. *In re D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 50. There is, however, no bright line that differentiates between the standard required in criminal trials and that required in juvenile proceedings. *See id.* at ¶ 51 ("The standard as to whether due process requirements are met is inexact"). We now address whether the juvenile court's authority to invoke the stayed adult sentence based on clear and convincing evidence, pursuant to R.C. 2152.14(E)(1), comports with due process.

{¶ 16} We do not view the invocation proceeding as akin to a delinquency proceeding. Even J.V. states that the invocation proceeding "is not technically a separate delinquency proceeding." We also don't view the invocation proceeding as similar to a full-blown adult criminal trial. Clearly, it is not. We see the invocation proceeding as similar to the proceedings incident to a criminal court's imposition of a suspended sentence.

{¶ 17} In Ohio, courts typically impose two sentences on a criminal defendant: a prison term and a period of postrelease control. *See* R.C. 2967.28(B). During the period of postrelease control, the defendant is subject to conditions. R.C. 2967.28(D)(1). Violation of these conditions may result in the trial court imposing a prison term. R.C. 2967.28(F)(3). This approach has been characterized as a carrot-and-stick approach because the carrot of rehabilitation without institutional confinement is offered as an inducement to good behavior, even as the trial court retains the stick of imposing institutional confinement. We view the blended sentences imposed on serious youthful offenders in much the same way. *In re D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, at ¶ 38. In the federal criminal court system, defendants are treated similarly. *See United States v. Makres*, 851 F.2d 1016, 1019 (7th Cir.1988).

{¶ 18} In both state and federal systems, the trial court decides on its own whether to revoke postrelease control (or probation) and whether to impose an additional prison term. In Ohio, this judicial authority has deep roots.

> The power to stay the execution of a sentence, in whole or in part, in a criminal case, is inherent in every court having final jurisdiction in such cases, unless otherwise provided by statute. The suspension being in favor of the prisoner, is for his benefit, and is valid, whether consented to by him or not. When the suspension is upon conditions expressed in the judgment, the

> prisoner has the right to rely upon such conditions, and so long as
> he complies therewith the suspension will stand.

*Weber v. State*, 58 Ohio St. 616, 619, 51 N.E. 116 (1898).

{¶ 19} The United States Supreme Court has stated that "there is no right to a jury trial before probation may be revoked." *Minnesota v. Murphy*, 465 U.S. 420, 435, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), fn. 7. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), discussing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). ("Even though the revocation of parole is not a part of the criminal prosecution, we held that the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process").

{¶ 20} Because the invocation proceeding is not a criminal proceeding, the fact-finding need not be according to the beyond-a-reasonable-doubt standard required in criminal trials. The clear-and-convincing-evidence standard allowed by R.C. 2152.14(E)(1) is less rigorous, though stronger than a mere preponderance-of-the-evidence standard. We have stated that clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The standard requires the judge to have a firm belief or conviction about the facts adduced. We conclude that there is nothing fundamentally unfair about a statutory scheme that authorizes a judge to reach conclusions about facts according to a clear-and-convincing-evidence standard, as R.C. 2152.14(E)(1) does.

{¶ 21} In this case, J.V. had notice of the invocation hearing, he was present at the hearing, he had counsel at the hearing, he had the opportunity to present evidence at the hearing, and he had the opportunity to cross-examine the

witnesses called by the state. Based on our examination of the record, the court complied with the statutory framework laid out in R.C. 2152.14. We conclude that J.V. was not denied due process based on the fact that the trial court reached factual conclusions according to a clear-and-convincing-evidence standard.

*Jurisdiction of Juvenile Court to Impose a Stayed Sentence after the*
*Juvenile Delinquent Reaches the Age of 21*

{¶ 22} J.V. argues that the juvenile court did not have jurisdiction over him when it sentenced him in February 2010. He relies on R.C. 2152.02(C)(6), which states, "The juvenile court has jurisdiction over a person who is adjudicated a delinquent child or juvenile traffic offender prior to attaining eighteen years of age until the person attains twenty-one years of age."

{¶ 23} This language is straightforward. It states that juvenile courts have jurisdiction over adjudicated delinquents until they are 21 years old. The obvious flip side of that statement is that juvenile courts do not have jurisdiction over adjudicated delinquents once they are 21 years old. There is no need to interpret the statute; we need only apply the facts of this case to the law. *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979).

{¶ 24} J.V. turned 21 on March 11, 2009. Accordingly, the juvenile court had no jurisdiction over him after that date. Nevertheless, in February 2010, it held a de novo sentencing hearing to correct the original juvenile disposition, which did not mention postrelease control. At that time, the juvenile court imposed the adult sentence and added postrelease control. Based on the plain language of R.C. 2152.02(C)(6), the juvenile court did not have jurisdiction over J.V. There can be no doubt that the juvenile court acted outside its jurisdiction and therefore that the disposition issued in February 2010 is void.

## Conclusion

{¶ 25} For the foregoing reasons, we affirm in part and reverse in part.

Judgment affirmed in part

and reversed in part.

O'CONNOR, C.J., and LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in part and dissent in part.

_____

**MCGEE BROWN, J., concurring.**

{¶ 26} I concur in the opinion of the majority but write separately to address the jurisdictional theory of the dissent. The dissent seems to argue that our precedent allows us to find jurisdiction where it is not provided by statute. In Ohio, juvenile courts are creatures of statute with limited jurisdiction set by the General Assembly. *See In re Agler*, 19 Ohio St.2d 70, 72-74, 249 N.E.2d 808 (1969). Consequently, only the General Assembly can expand the jurisdiction of the juvenile court to address the gap in the serious-youthful-offender scheme that this case illustrates.

{¶ 27} It is helpful to understand the long history of this case. J.V. initially was sentenced on June 17, 2005, when he was 17 years old. He received a blended sentence consisting of a juvenile sentence and an adult sentence that allowed him to spend the first portion of his sentence in the Ohio Department of Youth Services ("ODYS"). The juvenile court in imposing this sentence failed to correctly notify J.V. of his postrelease-control obligations or to include postrelease control in its judgment entry.

{¶ 28} On May 18, 2006, the Eighth District reversed the juvenile court, finding that J.V.'s first sentencing entry did not correctly reflect the length of his sentence as established at the disposition hearing. *In re J.V.*, 8th Dist. Nos. 86849 and 86850, 2006-Ohio-2464, 2006 WL 1351647. The appellate court remanded the case to the juvenile court with instructions to correct the sentence. The juvenile court resentenced J.V. on January 5, 2007. At this point, J.V. was 18,

and the juvenile court failed for the second time to correctly impose postrelease control. J.V. did not appeal this entry.

{¶ 29} On February 5, 2009, the juvenile court imposed the adult portion of J.V.'s sentence. J.V. was now 20. For the third time, the juvenile court did not correctly impose postrelease control. The Eighth District once again reversed and on January 14, 2010, remanded the case to the juvenile court for resentencing. However, by this date, J.V. was 21 years old.

{¶ 30} With respect to each of these sentencing entries, there is no dispute that the juvenile court had jurisdiction under R.C. 2152.02(C)(6) to impose postrelease control as required by law. But the juvenile court did not correctly impose postrelease control until February 12, 2010, when J.V. was nearly 22 and the juvenile court no longer had jurisdiction over the case.

{¶ 31} Contrary to the argument of the dissent, neither the juvenile court nor this court has authority to grant jurisdiction when there is none. This is the province of the legislature. We simply do not have authority to uphold the juvenile court's exercise of jurisdiction when it was contrary to the express language of R.C. 2152.02(C)(6).

{¶ 32} This case has revealed a gap in the law that should be addressed by the legislature. This is an unfortunate result that was not intended by the legislature. However, the error here is not the juvenile's exercise of his right of appeal.

{¶ 33} I respectfully concur in the majority opinion.

O'CONNOR, C.J., and CUPP, J., concur in the foregoing opinion.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 34} In this appeal, we confront two issues: (1) whether R.C. 2152.14 violates the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution and (2) whether the

juvenile court is divested of jurisdiction to correct a void sentence after the juvenile turns 21 years of age. Although I concur in the majority's holding that R.C. 2152.14 is constitutional, I respectfully dissent from the determination that the juvenile court lacked authority to correct the sentence to impose postrelease control after J.V. turned 21.

### Blended Sentencing

{¶ 35} The General Assembly authorized the imposition of blended sentences in order to give juvenile courts more flexibility in handling violent juvenile offenders. Prior to the enactment of 2000 Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447, juvenile courts had the choice of two extremes: the court could treat the child as a juvenile, committing the child to the Department of Youth Services ("DYS") for a period not to exceed the juvenile's attainment of 21 years of age, or it could treat the child as an adult and transfer the case to the common pleas court, depriving the child of a chance at rehabilitation and exposing the child to an adult sentence in an adult prison. *See* former R.C. 2151.26, 1996 Am.Sub.H.B. No. 124, 146 Ohio Laws, Part II, 2034, 2054, and former R.C. 2151.355, 2000 Am.Sub.S.B. No. 222, 148 Ohio Laws, Part V, 10900.

{¶ 36} Against this backdrop, the General Assembly enacted S.B. 179 and authorized juvenile courts to impose a blended sentence, which is a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. A blended sentence functions as both a carrot and a stick; the adult sentence remains stayed so long as the juvenile successfully completes the traditional juvenile disposition, and the threat of an adult prison term encourages the juvenile to cooperate in his rehabilitation. R.C. 2152.13(D)(2)(a)(iii); *State v. D.H.,* 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209. At the same time, blended sentencing provides the juvenile court with a means to supervise the

14

rehabilitative process and to ensure that an offender who remains dangerous is not released into society solely by virtue of turning 21.

**{¶ 37}** J.V. benefited from this flexibility. The state had charged him with attempted murder—in addition to aggravated robbery, felonious assault, and firearm specifications—an allegation that would have resulted in mandatory transfer to the common pleas court for prosecution of J.V. as an adult. R.C. 2152.10. However, the state entered into a plea agreement with J.V. in order "to give this young man one more chance to try to right his ways," in the words of the assistant prosecutor at the dispositional hearing, in the belief that a blended sentence would encourage rehabilitation. The juvenile court accepted J.V.'s admissions and on June 22, 2005, imposed the jointly recommended blended sentence, committing J.V. to DYS and staying the adult prison term. J.V. avoided prosecution as an adult and gained an opportunity to rehabilitate himself.

**{¶ 38}** However, J.V. wasted that opportunity. While at DYS, he rose in the ranks of a gang called the Heartless Felons and committed offenses of violence against a juvenile corrections officer and a fellow inmate. Because J.V. failed to reform himself, the juvenile court ordered the adult portion of the sentence into execution on February 5, 2009—*before* J.V. turned 21 years old on March 11, 2009. J.V. appealed, and the Eighth District Court of Appeals vacated the sentence based on the juvenile court's failure to properly impose postrelease control and remanded the matter for resentencing. *In re J.V.*, 8th Dist. No. 92869, 2010-Ohio-71, ¶ 23-24. On remand, the juvenile court resentenced him and properly imposed postrelease control.

**{¶ 39}** J.V. again appealed, asserting that the juvenile court lacked jurisdiction to correct his sentence because he had reached the age of 21. The Eighth District rejected this argument and affirmed, holding that "the determination by the juvenile court to invoke the adult portion of the SYO sentence on February 5, 2009, was not impacted by the subsequent decision from

this Court to remand the case for a new hearing to properly incorporate postrelease control in J.V.'s dispositional sentence." *In re J.V.*, 8th Dist. No. 94820, 2010-Ohio-5490, ¶ 20.

{¶ 40} Then, following that judgment and before J.V. appealed to this court, we announced *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, where we recognized that "when a judge fails to impose statutorily mandated postrelease control as part of a defendant's sentence, that *part* of the sentence is void and must be set aside." (Emphasis sic.) *Id.* at ¶ 26. The court further explained, "Although the doctrine of res judicata does not preclude review of a void sentence, res judicata still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence." *Id.* at paragraph three of the syllabus. Accordingly, we concluded, "The scope of an appeal from a resentencing hearing in which a mandatory term of postrelease control is imposed is limited to issues arising at the resentencing hearing." *Id.* at paragraph four of the syllabus.

{¶ 41} In my view, *Fischer* applies to this case and supports the appellate court's resolution of this matter. In this case, the trial court invoked the adult portion of the blended sentence before J.V. reached the age of 21, and the court's failure to properly impose postrelease control did not affect the lawful part of the sentence imposed on June 22, 2005, which was ordered into execution on February 5, 2009, and included a term of imprisonment. According to our holding in *Fischer*, this appeal from a resentencing to properly impose postrelease control is limited to issues arising at the resentencing hearing, and res judicata precludes any other challenge to the sentence.

{¶ 42} Moreover, the juvenile court had authority to correct the void part of the sentence in order to properly impose postrelease control, even after J.V. reached 21 years of age. As we have consistently recognized, "[a] trial court's jurisdiction over a criminal case is limited after it renders judgment, *but it retains*

*jurisdiction to correct a void sentence* and is authorized to do so." (Emphasis added.) *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 23, citing *State ex rel. Cruzado v. Zaleski,* 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19, and *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23; *see also Commonwealth v. S.K.*, 253 S.W.3d 486, 489 (Ky.2008) (holding that a juvenile court retains jurisdiction to enforce orders of restitution even after the child turns 18 years old).

**{¶ 43}** Not only did the juvenile court retain jurisdiction to correct the void part of J.V.'s sentence, but also the mandate of the appellate court required it to do so. *See State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979) ("The Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals"); *see also* R.C. 2505.39 ("A court that reverses or affirms a final order, judgment, or decree of a lower court upon appeal on questions of law, shall not issue execution, but shall send a special mandate to the lower court for execution or further proceedings"). In my view, then, the juvenile court had inherent authority to correct the adult portion of the blended sentence.

**{¶ 44}** The effect of today's decision by the majority is significant in a number of respects. First of all, it will have substantial precedential value in cases where a juvenile appeals a blended sentence and reaches the age of 21 during the pendency of the appeal. Second, in this case, J.V. received credit for the time served in DYS against the adult sentence and therefore has completed serving the term of incarceration; the majority has now removed postrelease-control sanctions on him, denying the state the opportunity to supervise his postrelease conduct, contrary to the intent of the General Assembly.

### Conclusion

**{¶ 45}** The court's decision today frustrates the intent of the General Assembly in authorizing blended sentences and threatens to deprive other children

of a last opportunity for rehabilitation as had been afforded J.V. The practical result is that serious youthful offenders now have an incentive to appeal any blended sentence imposed in the hopes of delaying the appeal long enough to divest the juvenile court of jurisdiction to invoke the adult portion of the blended sentence. As a consequence, a juvenile court choosing between imposing a blended sentence that it may not be able to invoke in a proper case and transferring the case to common pleas court for prosecution of the child as an adult may be more likely to transfer the case and thereby deprive a child of a chance for rehabilitation in the juvenile court.

{¶ 46} Accordingly, because the juvenile court had jurisdiction to invoke the adult portion of the blended sentence in this case, I would affirm the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Robert L. Tobik, Cuyahoga County Public Defender, and Cullen Sweeney, Assistant Public Defender, for appellant, J.V.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Kristen L. Sobieski, Assistant Prosecuting Attorney, for appellee, state of Ohio.

Timothy Young, Ohio Public Defender, and Jill Beeler and Amanda J. Powell, Assistant Public Defenders, urging reversal for amicus curiae Ohio Public Defender.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and David M. Lieberman and Elizabeth A. Matune, Assistant Attorneys General, urging affirmance for amicus curiae Ohio Attorney General.

_____