[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Aalim,* Slip Opinion No. 2016-Ohio-8278.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8278

THE STATE OF OHIO, APPELLEE, *v.* AALIM, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Aalim,* Slip Opinion No. 2016-Ohio-8278.]

*Juvenile procedure—Due process—Mandatory transfer of juveniles to general division of common pleas court violates juveniles' right to due process under Article I, Section 16 of Ohio Constitution—Discretionary transfer of juveniles 14 years old or older to general division under R.C. 2152.10(B) and 2152.12(B) through (E) satisfies due process under Article I, Section 16—Court of appeals' judgment reversed and cause remanded for amenability hearing.*

(No. 2015-0677—Submitted April 20, 2016—Decided December 22, 2016.)

APPEAL from the Court of Appeals for Montgomery County,

No. 26249, 2015-Ohio-892.

_____

**SYLLABUS OF THE COURT**

1.    The mandatory transfer of juveniles to the general division of common pleas court violates juveniles' right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution.

2.    The discretionary transfer of juveniles 14 years old or older to the general division of common pleas court pursuant to the process set forth in R.C. 2152.10(B) and 2152.12(B) through (E) satisfies due process as guaranteed by Article I, Section 16 of the Ohio Constitution.

_____

**LANZINGER, J.**

{¶ 1} In this case we are asked whether certain provisions of the Revised Code that make transfer of juveniles to adult court mandatory in specific circumstances violate constitutional due-process and equal-protection provisions. We hold that mandatory transfer of juveniles without providing for the protection of a discretionary determination by the juvenile court judge violates juveniles' right to due process.

**I.  CASE BACKGROUND**

{¶ 2} In December 2013, a complaint was filed in the Juvenile Division of the Montgomery County Court of Common Pleas, alleging that appellant, Matthew I. Aalim, engaged in conduct that would be considered aggravated robbery in violation of R.C. 2911.01(A)(1) if committed by an adult.  The complaint also contained a firearm specification.  Appellee, the state of Ohio, filed a motion to transfer Aalim, requesting that the juvenile court relinquish jurisdiction and transfer him to the general division of the common pleas court to be tried as an adult pursuant to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b), which provide for mandatory transfer of juveniles to adult court in certain circumstances.

{¶ 3} After conducting a hearing, the juvenile court found that Aalim was 16 years old at the time of the alleged offense and that there was probable cause to

believe that he committed the conduct alleged in the complaint, including the firearm specification. The juvenile court automatically transferred the case to the general division of the common pleas court as the statute required. An indictment was issued charging Aalim with two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) with accompanying firearm specifications.[1]

{¶ 4} Aalim filed a motion to dismiss the indictment and transfer his case back to juvenile court, arguing that mandatory transfer of juveniles pursuant to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violates their rights to due process and equal protection as well as the prohibition against cruel and unusual punishments under both the United States and Ohio Constitutions. The trial court overruled the motion, and Aalim entered pleas of no contest to the two counts of aggravated robbery. The court accepted the pleas, dismissed the firearm specifications consistently with a plea agreement that the parties had reached, and sentenced Aalim to concurrent prison terms of four years on each count.

{¶ 5} The Second District Court of Appeals affirmed the trial court's judgment, rejecting Aalim's challenges to the mandatory-transfer statutes. Rejecting Aalim's due-process argument, the court of appeals relied on a previous decision to hold that the mandatory-transfer scheme of R.C. 2152.12 comports with fundamental concepts of due process. 2015-Ohio-892, ¶ 7-9, citing *State v. Brookshire*, 2d Dist. Montgomery No. 25853, 2014-Ohio-1971, ¶ 30. It also rejected Aalim's equal-protection argument, concluding that the singling out of juveniles aged 16 and 17 charged with serious offenses is rationally related to the legitimate governmental purpose of protecting society and reducing violent crime

---

[1] The two counts of aggravated robbery in the indictment reflected the fact that there were two victims of the alleged conduct.

by juveniles. *Id.* at ¶ 13-17, citing *State v. Anderson*, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, ¶ 72-75.[2]

{¶ 6} We accepted jurisdiction over two propositions of law, which ask us to hold that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) violate juveniles' rights to due process and equal protection as guaranteed by the United States and Ohio Constitutions. *See* 143 Ohio St.3d 1498, 2015-Ohio-4468, 39 N.E.3d 1270.

## II. LEGAL ANALYSIS

### A. Argument Summary

*1. The statutes*

{¶ 7} R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory transfer and provides:

> (A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:
>
> (1) The child is charged with a category one offense and either of the following apply:
>
> (a) The child was sixteen years of age or older at the time of the act charged.
>
> (b) The child was fourteen or fifteen years of age at the time of the act charged and previously was adjudicated a delinquent child for committing an act that is a category one or category two offense and was committed to the legal custody of the department of youth services upon the basis of that adjudication.

---

[2] Aalim also raised a cruel-and-unusual-punishments challenge, which the Second District rejected. 2015-Ohio-892, at ¶ 19-21. He has not included his cruel-and-unusual-punishments argument in this appeal.

(2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:

(a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.

(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

Aggravated robbery is a category-two offense, R.C. 2152.02(CC)(1), and Aalim was 16 years old at the time the offense was committed. Because he was also charged with a firearm specification, automatic transfer was required. R.C. 2152.10(A)(2)(b). A juvenile court must transfer automatically under these circumstances if "there is probable cause to believe that the child committed the act charged." R.C. 2152.12(A)(1)(b)(ii).

{¶ 8} To prevail on a facial constitutional challenge to a statute, the challenging party must prove beyond a reasonable doubt that the statute is unconstitutional. *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7, citing *State v. Warner*, 55 Ohio St.3d 31, 43, 564 N.E.2d 18 (1990), citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Statutes are presumed constitutional, and we have stated that for a statute to be facially unconstitutional, it must be unconstitutional

in all applications. *Id.*, citing *Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13.

### 2. *Positions of the parties*

**{¶ 9}** Aalim presents facial due-process and equal-protection challenges to the mandatory-transfer statutes. His arguments regarding due process are (1) that fundamental fairness requires that every juvenile receive an opportunity to demonstrate a capacity to change, (2) that youth must always be considered as a mitigating—not aggravating—factor, (3) that the irrebuttable presumption of transfer contained in the statutes is fundamentally unfair, and (4) that juveniles have a substantive due-process right to have their youth and its attendant characteristics taken into account at every stage of the proceedings (including transfer).

**{¶ 10}** In support of his equal-protection claim, Aalim argues (1) that the mandatory-transfer statutes create classes of similarly situated juveniles who are treated differently based solely on their ages, (2) that a juvenile's status as a juvenile is a suspect class for purposes of equal-protection analysis, and (3) that the age-based distinctions in the mandatory-transfer statutes are not rationally related to the purpose of juvenile-delinquency proceedings.

**{¶ 11}** The state counters that the only process due to juveniles is codified in the mandatory-transfer statutes as a special measure created for certain specified circumstances. The state also argues that Aalim's equal-protection challenge fails because the statutes do not infringe on substantive rights or affect a suspect class and are rationally related to a legitimate government interest.

### B. Due Process

**{¶ 12}** The Fourteenth Amendment to the United States Constitution states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

{¶ 13} As the United States Supreme Court has observed, "For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined." *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Due process is a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur. *Walters v. Natl. Assn. of Radiation Survivors*, 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). "Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Lassiter* at 24-25.

{¶ 14} "[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Juveniles are entitled to basic constitutional protections such as the right to counsel, the right to receive notice of the charges alleged, the privilege against self-incrimination, the application of the proof-beyond-a-reasonable-doubt standard, and the protection against double jeopardy. *Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).

{¶ 15} Article I, Section 16 of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." We have explained that the Ohio Constitution provides unique protection for Ohioans:

> The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts

provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.

*Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. And despite the dissent's inclination to walk in lockstep with the federal courts on constitutional matters, we have repeatedly recognized that the Ohio Constitution contains greater protections than the federal Constitution in certain instances. *See Simpkins v. Grace Brethren Church of Delaware, Ohio*, ___ Ohio St.3d ___, 2016-Ohio-8118, ___ N.E.3d ___, ¶ 61 (Lanzinger, J., concurring in judgment only).

{¶ 16} The juvenile courts "occupy a unique place in our legal system." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65. The juvenile court system is a legislative creation based on promoting social welfare and eschewing traditional, objective criminal standards and retributive notions of justice. *Id.* at ¶ 66. "Since its origin, the juvenile justice system has emphasized individual assessment, the best interest of the child, treatment, and rehabilitation, with a goal of reintegrating juveniles back into society." *State v. Hanning*, 89 Ohio St.3d 86, 88, 728 N.E.2d 1059 (2000). "[T]he General Assembly has adhered to the core tenets of the juvenile system even as it has made substantive changes to the Juvenile Code in a get-tough response to increasing juvenile caseloads, recidivism, and the realization that the harms suffered by victims are not dependent upon the age of the perpetrator." *C.S.* at ¶ 74.

{¶ 17} A common thread underlying the analysis in our juvenile cases is the recognition "that a juvenile could 'receive[ ] the worst of both worlds' in the juvenile court system by being provided 'neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.' " *Id.* at

¶ 70, quoting *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In recognition of juveniles' need for procedural protections, our decisions have acknowledged that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26. For example, we have held that juveniles have a right to counsel, *In re Agler*, 19 Ohio St.2d 70, 249 N.E.2d 808 (1969), paragraph one of the syllabus; a Fifth Amendment right to protection from self-incrimination, *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 1; and a right to full double-jeopardy protections under the Ohio Constitution, *In re A.G.*, __ Ohio St.3d __, 2016-Ohio-3306, __ N.E.3d __, ¶ 11-12.

1. *Juveniles are entitled to fundamental fairness*

{¶ 18} In considering a juvenile's right to counsel during juvenile proceedings, we noted that the phrase "due process"

> "expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake."

*C.S.* at ¶ 80, quoting *Lassiter*, 452 U.S. at 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640. We have accordingly observed, "Because of the state's stake in the rehabilitation of the juvenile offender and the theoretically paternal role that the state continues to play in juvenile justice, a balanced approach is necessary to preserve the special

nature of the juvenile process while protecting procedural fairness." *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 49.

{¶ 19} We have recently discussed the concept of fundamental fairness in juvenile proceedings in holding that automatic, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system violates due process. *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 71. In *C.P.*, we emphasized that the discretion of the juvenile judge is an "essential element of the juvenile process." *Id.* at ¶ 77. We accordingly held that fundamental fairness requires that the juvenile court judge decide the appropriateness of any adult penalty for juvenile acts. *Id.* at ¶ 78. Of particular importance to this case, we explained that fundamental fairness may require additional procedural protections for juveniles:

> [F]undamental fairness is not a one-way street that allows only for an easing of due process requirements for juveniles; instead, fundamental fairness may require, as it does in this case, additional procedural safeguards for juveniles in order to meet [ ] the juvenile system's goals of rehabilitation and reintegration into society.

*Id.* at ¶ 85.

{¶ 20} Aalim argues that we should apply the principles of our previous juvenile cases to hold that he is entitled to be treated as a juvenile under the jurisdiction of the juvenile court and should receive an amenability hearing before any transfer to the general division of common pleas court. He asserts that juvenile court judges are in the best position to evaluate each juvenile's suitability for juvenile or adult court, that fundamental fairness requires that juveniles have the opportunity to demonstrate a capacity to change and suitability to juvenile court,

and that an amenability hearing is accordingly necessary before juveniles are transferred. We agree.

2. *The special status of juveniles*

**{¶ 21}** The legislative decision to create a juvenile court system, along with our cases addressing due-process protections for juveniles, have made clear that Ohio juveniles have been given a special status. This special status accords with recent United States Supreme Court decisions indicating that even when they are tried as adults, juveniles receive special consideration. *See Roper v. Simmons*, 543 U.S. 551, 570-571, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 77-78, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012).

**{¶ 22}** In this line of cases, the Supreme Court has established that youth is a mitigating factor for purposes of sentencing. *Roper* at 570, citing *Johnson v. Texas*, 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Graham* at 77-78; *Miller* at 2467. While those cases featured Eighth Amendment claims, the court has clearly stated that "children are constitutionally different from adults for purposes of sentencing," *Miller* at 2464. The court has explained three significant differences between juveniles and adults:

> First, children have a " 'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S., at 569, 125 S.Ct. 1183 [161 L.Ed. 2d 1, quoting *Johnson* at 367]. Second, children "are more vulnerable * * * to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid*. And third, a child's character is not as "well formed" as an adult's; his

traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.*, at 570, 125 S.Ct. 1183 [161 L.Ed.2d 1].

(Ellipsis sic.) *Miller* at 2464.

{¶ 23} We have acknowledged these federal principles in our own recent holdings with respect to Ohio law. *See State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, paragraphs one and two of the syllabus (following *Miller* in holding that a court must separately consider on the record the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole); *A.G.*, __ Ohio St.3d __, 2016-Ohio-3306, __ N.E.3d __, at ¶ 13 (the Ohio Constitution ensures that juveniles receive the same double-jeopardy protection as adults); *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 1, 24 (under Ohio law, an uncounseled adjudication of juvenile delinquency may not be used to enhance the penalty for a later adult conviction for operating a motor vehicle while intoxicated when there was no effective waiver of the right to counsel); *C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, at ¶ 78 (fundamental fairness requires that the juvenile court judge decide the appropriateness of any adult penalty for juvenile acts).

{¶ 24} For purposes of delinquency proceedings, the General Assembly has chosen to treat every person under the age of 18 as a child until transfer has occurred. R.C. 2152.02(C).[3] All 16- and 17-year-olds accordingly fall under the definition of "child" and are afforded the constitutional protections that all children

---

[3] R.C. 2152.02(C)(5) provides a limited exception to this rule for "any person who is adjudicated a delinquent child for the commission of an act, who has a serious youthful offender dispositional sentence imposed for the act pursuant to section 2152.13 of the Revised Code, and whose adult portion of the dispositional sentence is invoked pursuant to section 2152.14 of the Revised Code." Under this exception, the person will no longer be considered a child in future cases in which a complaint is filed against that person.

receive until their transfer has been completed. Their age should not be treated as the sole decisive factor in determining whether they are transferred for criminal prosecution, and it is therefore a logical step for us to hold that *all* children, regardless of age, must have individual consideration at amenability hearings before being transferred from the protections of juvenile court to adult court upon a finding of probable cause for certain offenses.

{¶ 25} We now recognize that because children are constitutionally required to be treated differently from adults for purposes of sentencing, juvenile procedures themselves also must account for the differences in children versus adults. The mandatory-transfer statutes preclude a juvenile court judge from taking any individual circumstances into account before automatically sending a child who is 16 or older to adult court. This one-size-fits-all approach runs counter to the aims and goals of the juvenile system, and even those who would be amenable to the juvenile system are sent to adult court. Juvenile court judges must be allowed the discretion that the General Assembly permits for other children. They should be able to distinguish between those children who should be treated as adults and those who should not. Cognizant of our statement in *C.P.* that fundamental fairness may require additional procedural safeguards for juveniles in order to meet the juvenile system's goals of rehabilitation and reintegration into society, we hold that the right to due process under the Ohio Constitution requires that all children have the right to an amenability hearing before transfer to adult court and that the mandatory-transfer statutes violate the right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution.[4]

{¶ 26} Given the special status of children, we are unconvinced by the state's argument that the only process due in these circumstances is codified in the

---

[4] Because our analysis relies on the concept of fundamental fairness as developed in this court's decisions, our holding is limited to claims arising under the Ohio Constitution, and we make no statement in this opinion on corresponding claims arising under the United States Constitution.

mandatory-transfer statutes as a special measure created for certain specified circumstances. The existence of a juvenile court system and the principles set forth in our previous cases dictate that children are fundamentally different from adults. All children are entitled to fundamental fairness in the procedures by which they may be transferred out of juvenile court for criminal prosecution, and an amenability hearing like the one required in the discretionary-transfer provisions of the Revised Code is required to satisfy that fundamental fairness.

*3. Discretionary transfer*

**{¶ 27}** The General Assembly has provided for discretionary transfer of children aged 14 or older when there is probable cause to believe the child committed the charged act, the child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. R.C. 2152.12(B). Before transferring, the juvenile court must "order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child." R.C. 2152.12(C). R.C. 2152.12(B) further provides:

> In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.

R.C. 2152.12(D) and (E) enumerate nonexhaustive factors in favor of and against transfer, respectively, for the juvenile court to consider. These factors include the emotional, physical, and psychological maturity of the child; the child's previous

14

experiences in the juvenile system; the harm suffered by the victim; whether the child was the principal actor in the conduct charged; and whether the child was under any negative influence or coercion at the time of the conduct charged. R.C. 2152.12(D) and (E).

**{¶ 28}** The discretionary-transfer process satisfies fundamental fairness under the Ohio Constitution. It takes into account the fact that children are constitutionally different from adults for purposes of an eventual sentencing after findings of guilt. Its factors account for the differences between children and adults noted by the *Miller* court: children's lack of maturity, their vulnerability to negative influences and outside pressures, and their more malleable character that makes their actions less likely to be evidence of irretrievable depravity. In doing so, the discretionary-transfer process ensures that only those children who are not amenable to dispositions in juvenile court will be transferred. Thus, while we hold that the mandatory-transfer statutes violate juveniles' right to due process as guaranteed under the Ohio Constitution, transfer of juveniles amenable to adult court may still occur via the discretionary-transfer process set forth in R.C. 2152.10(B) and 2152.12(B) through (E).

**{¶ 29}** "When this court holds that a statute is unconstitutional, severing the portion that causes it to be unconstitutional may be appropriate." *Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 18, citing R.C. 1.50. We have set forth a three-part test to determine whether a statute is severable:

"(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the

constitutional part from the unconstitutional part, and to give effect to the former only?"

*Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927), quoting *State v. Bickford*, 28 N.D. 36, 147 N.W. 407 (1913), paragraph 19 of the syllabus. Clearly, the mandatory-transfer provisions and discretionary-transfer provisions are capable of separation, can be read independently, and can stand independently. Furthermore, it is possible to carry out transfers of juveniles to adult court once the unconstitutional provisions are stricken. And no words or terms need to be inserted in the discretionary-transfer provisions in order to give effect to them. Therefore, having held that the mandatory-transfer provisions of R.C. 2152.10(A) and 2152.12(A) are unconstitutional, we sever those provisions. After the severance, transfers of juveniles previously subject to mandatory transfer may occur pursuant to R.C. 2152.10(B) and 2152.12(B).

{¶ 30} Finally, we note that because we have concluded that the mandatory-transfer statutes are unconstitutional in violation of juveniles' right to due process, we decline to address the equal-protection issue raised in Aalim's second proposition of law.

### III.  CONCLUSION

{¶ 31} We hold that the mandatory transfer of juveniles to the general division of common pleas court violates juveniles' right to due process as guaranteed by Article I, Section 16 of the Ohio Constitution. We also hold that the discretionary transfer of juveniles 14 years old or older to the general division of common pleas court pursuant to the process set forth in R.C. 2152.10(B) and 2152.12(B) through (E) satisfies due process as guaranteed by Article I, Section 16 of the Ohio Constitution.

{¶ 32} We accordingly reverse the judgment of the Second District Court of Appeals and remand the cause to the juvenile court for an amenability hearing pursuant to R.C. 2152.10 and 2152.12.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

FRENCH, J., dissents, with an opinion joined by O'DONNELL, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 33} I agree with the majority that the discretionary-bindover process under R.C. 2152.10(B) and 2152.12(B) through (E) does not offend due process as guaranteed by Article I, Section 16 of the Ohio Constitution. I part with the majority, however, in its determination that Article I, Section 16 provides a unique protection that R.C. 2152.10(A), which sets forth the mandatory-bindover process, violates on its face.

{¶ 34} State courts are "free to construe their state constitutions as providing different or even broader individual liberties than those provided under the federal Constitution." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 41, 616 N.E.2d 163 (1993). However, we have interpreted the Ohio Due Course of Law Clause, Article I, Section 16, as coextensive with the Due Process Clause of the Fourteenth Amendment to the United State Constitution because the language of the two clauses is "virtually the same," *In re Hua*, 62 Ohio St.2d 227, 230, 405 N.E.2d 255 (1980) (unanimous decision). And our recognition that the two clauses are equivalent hearkens back to at least 1893. *See Salt Creek Valley Turnpike Co. v. Parks*, 50 Ohio St. 568, 579, 35 N.E. 304 (1893).

{¶ 35} Here, the majority is silent as to whether the mandatory-bindover procedure violates the Due Process Clause of the Fourteenth Amendment to the

United States Constitution.  Instead, the majority quotes the generalized statement in *Arnold* that " '[t]he Ohio Constitution is a document of independent force,' " majority opinion at ¶ 15, quoting *Arnold* at paragraph one of the syllabus, without engaging in any textual or historical analysis of the particular provision of the Ohio Constitution that is at issue.  While I agree with the majority that the Ohio Constitution *can be* a document of independent force, to leap to the legal conclusion that Article I, Section 16 provides unique protection to juveniles without analysis of the "protection [that] the United States Supreme Court has provided in its interpretation of" the Fourteenth Amendment, *Arnold* at paragraph one of the syllabus, suggests that the majority's determination is not based on constitutional interpretation but, rather, on its "sense of judicial necessity," *State v. Mole*, __ Ohio St.3d __, 2016-Ohio-5124, __ N.E.3d __, ¶ 91 (Kennedy, J., dissenting).

{¶ 36} Similarly, the majority's conclusion that R.C. 2152.10(A) is facially unconstitutional is not supported by a proper facial constitutional analysis. Judicially overriding the will of the legislature by declaring a statute facially infirm is an "exceptional remedy," and that power should be exercised with great caution and restraint.  *Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir.2010).  A facial constitutional challenge requires proof beyond a reasonable doubt that the statutory provision is constitutionally infirm.  *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21.  To succeed, the challenger must demonstrate that no set of circumstances exists under which the act would be valid.  *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21, citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).  "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid."  *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37.  "In order for a statute to be facially unconstitutional, it must be unconstitutional in all applications."  *Oliver*

*v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 13, citing *Harrold* at ¶ 37 and *Salerno* at 745. Facial challenges seek to remove a law from the books, i.e., to "leave nothing standing." *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir.2008). The majority's analysis does not meet this high standard.

**{¶ 37}** The majority relies on the due-process standard of "fundamental fairness." Due process is a flexible concept; however, at its core, it requires an opportunity to be heard when the government seeks to infringe on a protected liberty or property right, *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). As we have said:

> "There is no doubt that the Due Process Clause is applicable in juvenile proceedings. 'The problem,' we have stressed, 'is to ascertain the precise impact of the due process requirement upon such proceedings.' *In re Gault*, 387 U.S. 1, 13-14, 87 S.Ct. 1428, 1436-1437, 18 L.Ed.2d 527 (1967). We have held that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles. See Id., at 31-57, 87 S.Ct., at 1445-1459 [18 L.Ed.2d 527] (notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt); *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy)."

(Brackets sic.) *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 48, quoting *Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed. 207 (1984).

**{¶ 38}** Fundamental fairness is a "unique doctrine [that] is not appropriately applied in every case but only in those instances when the interests involved are especially compelling." *In re W.Z.*, 194 Ohio App.3d 610, 2011-Ohio-3238, 957 N.E.2d 367 (6th Dist.), ¶ 19. "It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation." *Id.*, quoting *State v. Yoskowitz*, 116 N.J. 679, 712, 563 A.2d 1 (1989). The majority holds that the current mandatory-bindover procedure violates fundamental fairness. I disagree.

**{¶ 39}** Article IV, Section 4(C) of the Ohio Constitution provides that there shall be "divisions of the courts of common pleas as may be provided by law." Pursuant to this authority, the General Assembly created Ohio's juvenile courts in R.C. Chapter 2151, and consequently, juvenile courts are creatures of statute. *State v. Wilson*, 73 Ohio St.3d 40, 43, 652 N.E.2d 196 (1995). As a statutorily created court, the juvenile court has limited jurisdiction, and it can exercise only the authority conferred upon it by the General Assembly. *See State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 165 N.E. 298 (1929), paragraph four of the syllabus.

**{¶ 40}** The majority takes this unique, statutorily created court system and bootstraps onto it "fundamental fairness" requirements that are not required by statute or by the explicit text or history of the Ohio Constitution. This is unsound. The majority reaches its conclusion by relying on past juvenile cases regarding the right to counsel; automatic, lifetime sex-offender registration and notification requirements; and sentencing juvenile offenders to life without the possibility of parole for nonhomicide offenses. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177; *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729; *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). However, these decisions are distinguishable because they relied on specific constitutional guarantees like the right to counsel contained in the Sixth Amendment applied to juvenile proceedings through the Due Process Clause and

the prohibition against cruel and unusual punishments contained in the Eighth Amendment rather than the broad and " ' "opaque" ' " principle of "fundamental fairness," majority opinion at ¶ 18, quoting *C.S.* at ¶ 80, quoting *Lassiter v. Dept. of Social Servs. of Durham, North Carolina*, 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

{¶ 41} In *D.H.*, we acknowledged that in order to comply with the fundamental-fairness due-process standard, juvenile proceedings must provide such "basic constitutional protections" as notice of the charges and the rights to counsel, confrontation, and cross-examination. 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.3d 209, at ¶ 48, citing *In re Gault*, 387 U.S. at 31-57, 87 S.Ct. 1428, 18 L.Ed.2d 527. R.C. 2152.12 requires a juvenile court to afford a juvenile with a probable-cause hearing prior to imposing mandatory bindover. This notice and opportunity to be heard complies with the fundamental-fairness due-process standard of Article I, Section 16 of the Ohio Constitution. The question whether a juvenile offender of the kind described in R.C. 2152.12(A)(1)(b) is amenable to care or rehabilitation within the juvenile system does not implicate fundamental fairness. It is a policy decision that is firmly in the hands of the General Assembly.

{¶ 42} "It is undisputed that the General Assembly is ' "the ultimate arbiter of public policy" ' and the only branch of government charged with fulfilling that role." *C.P.* at ¶ 97, quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. By declaring that juvenile courts are constitutionally required to provide an amenability hearing to those juveniles that the General Assembly has mandated are to be bound over after a probable-cause determination, the majority has unmoored due process from the precedents that have ensured that the judicial branch does not abuse the guarantee by imposing its policy views on the General Assembly under the rubric of alleged "fundamental

fairness." The United States Supreme Court has long recognized the importance of limiting the application of the federal Due Process Clause. "[T]he expansion of [ ] constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between *liberty and order*." (Emphasis added.) *Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). "[W]e 'have defined the category of infractions that violate "fundamental fairness" very narrowly' based on the recognition that, '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.' " *Id.*, quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Several months ago, a plurality of this court recognized that this was the state of the law in our decision in *Anderson*, __ Ohio St.3d __, 2016-Ohio-5791, __ N.E.3d __, ¶ 24 (declining to provide greater protection under the Ohio Constitution against multiple retrials than under the federal Constitution based on "fundamental fairness").

{¶ 43} The majority, however, now uses Article I, Section 16 of the Ohio Constitution as a tool to rewrite the balance the General Assembly struck between ensuring that dangerous juvenile offenders receive punishment commensurate with their crimes and allowing other juvenile offenders the opportunity for rehabilitation and reintegration. By elevating a juvenile's statutory right to an amenability hearing under R.C. 2152.10 and 2152.12 to a constitutional right mandated by Article I, Section 16, the majority will allow this court to invalidate any statutory or procedural rule that four members of this court believe is unfair. Therefore, while I concur in the majority's holding that the discretionary-bindover procedure is constitutional, I must dissent from the majority's holding that the mandatory-bindover procedure violates Article I, Section 16 of the Ohio Constitution.

_____

**FRENCH, J., dissenting.**

{¶ 44} I respectfully dissent.

{¶ 45} The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." And Article I, Section 16 of the Ohio Constitution states, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Until recently, this court had long held that the Ohio Constitution's "due course of law" provision is "the equivalent of the 'due process of law' clause in the Fourteenth Amendment." *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941). *Accord Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 69. *But see State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24 (finding a greater due-process right to counsel for a juvenile under the Ohio Constitution than under the United States Constitution).

{¶ 46} To be sure, as a document of independent force, the Ohio Constitution may provide greater protections of individual rights and civil liberties than the United States Constitution mandates. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. And a majority of this court has found greater protection under the Ohio Constitution than the United States Constitution provides in various criminal contexts other than due process. *See In re A.G.*, __ Ohio St.3d __, 2016-Ohio-3306, __ N.E.3d __, ¶ 11-13 (double jeopardy); *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 23 (extraterritorial stop for a minor misdemeanor); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 7 (protection against warrantless arrests for minor misdemeanors); *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 48 (right against self-incrimination). *See also State v. Mole*, __

Ohio St.3d __, 2016-Ohio-5124, __ N.E.3d __ ¶ 23 (plurality opinion) (stating that the Ohio Constitution's guarantee of equal protection independently precludes the classification at issue, without expressly finding that the Ohio Constitution provides greater protection than the United States Constitution). But the fact that the Ohio Constitution *may* provide greater protection than the United States Constitution is different from the question whether it does. *See State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997) ("Despite this wave of New Federalism, where the provisions are similar and no persuasive reason for a differing interpretation is presented, this court has determined that protections afforded by Ohio's Constitution are coextensive with those provided by the United States Constitution").

{¶ 47} While asserting no basis—other than mere permissibility—for holding that the Ohio Constitution affords juveniles greater due-process protections regarding transfer than the United States Constitution provides, and without considering whether the federal Due Process Clause guarantees juveniles an individualized amenability hearing, the majority concludes that Ohio's mandatory-transfer provisions—R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b)—violate Article I, Section 16 of the Ohio Constitution. I disagree with the majority's cavalier decision to create greater protections under the Ohio Constitution, absent compelling reasons to do so. And on the merits, I disagree with the majority's conclusion that Ohio's statutory mandatory-transfer provisions are unconstitutional.

{¶ 48} Appellant, Matthew I. Aalim, raises a facial due-process challenge to Ohio's mandatory-transfer procedures. In 1969, the General Assembly enacted a statutory scheme by which a juvenile court could remove certain juveniles from its authority and transfer them to adult court for criminal prosecution. *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 9. The current scheme provides for two types of transfer: mandatory and discretionary. *Id.* at ¶ 10.

Discretionary transfer affords juvenile court judges discretion to transfer to adult court juveniles who do not appear amenable to care or rehabilitation within the juvenile system and who appear to be a threat to public safety. R.C. 2152.12(B). "An amenability hearing helps determine whether a juvenile who is eligible for discretionary [transfer] will be transferred to adult court." *D.W.* at ¶ 12. Mandatory transfer, on the other hand, removes judicial discretion and requires transfer in certain circumstances, based on the juvenile's age and offense. R.C. 2152.12(A). A juvenile who qualifies for mandatory transfer is not statutorily entitled to an amenability determination, but the juvenile is entitled to a hearing at which the juvenile court must determine before transferring the juvenile for criminal prosecution that the juvenile was 16 or 17 years old at the time of the charged conduct and that there is probable cause to believe that the juvenile committed that conduct. R.C. 2152.12(A)(1). Here, we consider the statutory provisions regarding mandatory transfer.

{¶ 49} Aalim, as a 16-year-old alleged to be delinquent as a result of a category-two offense committed with a firearm, fell within the category of juveniles subject to mandatory transfer. R.C. 2152.10(A)(2)(b). R.C. 2152.12(A)(1)(b)(ii) required the juvenile court to transfer Aalim to adult court upon a finding of probable cause to believe that he committed the charged offense.

{¶ 50} Aalim argues that Ohio's mandatory-transfer provisions are unconstitutional because due process requires an amenability hearing—giving the juvenile the opportunity to demonstrate a capacity for change—before a juvenile court judge may transfer *any* juvenile to adult court. To succeed on his due-process challenge, Aalim must prove beyond a reasonable doubt that Ohio's mandatory-transfer provisions are clearly incompatible with constitutional due process. *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. To do so, he must overcome a strong presumption that the provisions are constitutional. R.C. 1.47; *State ex rel. Jackman v. Cuyahoga Cty.*

*Court of Common Pleas*, 9 Ohio St.2d 159, 161, 224 N.E.2d 906 (1967). In my view, Aalim does not satisfy that heavy burden.

{¶ 51} The phrase "due process" "expresses the requirement of 'fundamental fairness,' " and applying the Due Process Clause is "an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation." *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). But the Due Process Clause guarantees more than fair process; it also provides heightened protection against governmental interference with certain fundamental rights and liberty interests. *Washington v. Glucksberg*, 521 U.S. 702, 719-720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' * * * or interferes with rights 'implicit in the concept of ordered liberty' * * *." *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325-326, 58 S.Ct. 149, 82 L.Ed. 288 (1937), respectively. Substantive due process bars "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Procedural due process, on the other hand, requires the government to implement any action that deprives a person of life, liberty or property in a fair manner, even if the governmental action survives substantive due-process scrutiny. *Id.*

{¶ 52} Ohio's mandatory-transfer provisions do not offend either substantive or procedural due process.

{¶ 53} Substantive due process protects only "fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and

26

tradition' * * * and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " *Glucksberg* at 720-721, quoting *Moore v. E. Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), and *Palko* at 325, 326; *see also State v. Burnett*, 93 Ohio St.3d 419, 427, 755 N.E.2d 857 (2001), citing *Moore* at 503. Protected rights and liberties include the specific freedoms guaranteed by the Bill of Rights as well as such "deeply rooted" rights as the right to marry, the right to have children, and the right to bodily integrity. *Glucksberg* at 720. The United States Supreme Court has expressed reluctance to expand the concept of substantive due process. *Id.*

{¶ 54} It is evident from the history and evolution of juvenile proceedings in this country, as well as courts' consistent rejection of claims of fundamental rights to juvenile proceedings, that there is no fundamental right deeply rooted in the nation's history to juvenile court proceedings or to an amenability hearing. Juvenile courts are legislative creations rooted in social-welfare philosophy. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 66, citing *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The first juvenile court was not established in this country until 1899, *In re Gault*, 387 U.S. 1, 14, 87 S.Ct. 1428, 18 L.Ed.2d. 527 (1967), and it was not until 1937 that the Ohio General Assembly conferred exclusive jurisdiction over minors upon Ohio's juvenile courts, *In re Agler*, 19 Ohio St.2d 70, 72, 249 N.E.2d 808 (1969).

{¶ 55} Criminal common law did not differentiate between adults and juveniles who had reached the age of criminal responsibility—seven at common law. Mack, *The Juvenile Court*, 23 Harv.L.Rev. 104, 106 (1909). A juvenile offender who was over the age of criminal responsibility "was arrested, put into prison, indicted by the grand jury, tried by a petit jury, under all the forms and technicalities of our criminal law, with the aim of ascertaining whether it had done the specific act—nothing else—and if it had, then of visiting the punishment of the state upon it." *Id.* It was only the advent of juvenile statutes and juvenile courts

that advanced the age of criminal responsibility and created different procedures for juvenile adjudication. *Id.* at 109.

{¶ 56} This court has repeatedly held that any right to juvenile proceedings is purely statutory. *Agler* at 72, citing *Prescott v. State*, 19 Ohio St. 184, 187-188 (1869). And other state and federal courts have similarly rejected the idea of a fundamental constitutional right to juvenile status or juvenile proceedings. *See, e.g.*, *State v. Tyler*, 286 Kan. 1087, 1097, 191 P.3d 306 (2008) ("A juvenile has no constitutional right to be adjudicated under the Juvenile Justice Code"); *Manduley v. Superior Court*, 27 Cal.4th 537, 564, 117 Cal.Rptr.2d 168, 41 P.3d 3 (2002); *State v. Angel C.*, 245 Conn. 93, 124, 715 A.2d 652 (1998); *State v. Behl*, 564 N.W.2d 560, 567 (Minn.1997); *People v. Hana*, 443 Mich. 202, 220, 504 N.W.2d 166 (1993); *Jahnke v. State*, 692 P.2d 911, 928-929 (Wyo.1984), *overruled on other grounds*, *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998); *State v. Cain*, 381 So.2d 1361, 1363 (Fla.1980); *People v. Jiles*, 43 Ill.2d 145, 148, 251 N.E.2d 529 (1969); *Woodard v. Wainwright*, 556 F.2d 781, 785 (5th Cir.1977) ("treatment as a juvenile is not an inherent right but one granted by the state legislature"). Because there is no deeply rooted, fundamental right to juvenile court proceedings, Ohio's mandatory-transfer provisions do not violate substantive due process.

{¶ 57} Aalim's claim fares no better under procedural due process. To demonstrate a procedural-due-process violation, a plaintiff must first show that the state deprived him or her of a protected interest in life, liberty or property. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 567-570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Protected liberty interests may arise from the Due Process Clause itself or the laws of the states. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), citing *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In a procedural-due-process claim, the deprivation of a constitutionally protected interest in life, liberty or property is not itself unconstitutional; what is unconstitutional is the deprivation of that interest

without due process of law. *Zinermon*, 494 U.S. at 125, 110 S.Ct. 975, 108 L.Ed.2d 100, citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Before depriving a person of a protected interest, the state must afford the person some type of hearing unless the governmental interest involved justifies delaying the hearing. *Roth* at 570, fn. 7, citing *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

{¶ 58} There is "no doubt" that the Due Process Clause applies in juvenile proceedings. *Schall v. Martin*, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). *See also Gault*, 387 U.S. at 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 ("neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"). But there is also no doubt that the Due Process Clause itself does not give rise to an interest in juvenile proceedings because the right to juvenile proceedings is purely statutory, *Agler*, 19 Ohio St.2d at 72, 249 N.E.2d 808.

{¶ 59} To be sure, a juvenile facing a delinquency adjudication in juvenile court is entitled to certain basic constitutional rights enjoyed by adults accused of a crime. *Schall* at 263; *Agler* at 76. These include the right to counsel, the privilege against self-incrimination, the right to confront and cross-examine witnesses, the right to use of the beyond-a-reasonable-doubt standard of proof, and the right to be free from double jeopardy. *Schall* at 263, citing *Gault* at 31-57, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). As a result of *Gault* and its progeny, "juveniles secured more of the rights afforded to adults." *C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 74.

{¶ 60} The majority opinion states:

A common thread underlying the analysis in our juvenile cases is the recognition "that a juvenile could 'receive[ ] the worst of both worlds' in the juvenile court system by being provided

> 'neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.' "

Majority opinion at ¶ 17, quoting *C.S.* at ¶ 70, quoting *Kent* at 556. But when a juvenile is tried as an adult, the case does not implicate the "worst of both worlds" concern.

**{¶ 61}** In *Kent*, the Supreme Court expressed concern that juvenile courts were not measuring up to their laudable purpose of "provid[ing] measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Kent* at 554. The concern that a juvenile could receive "the worst of both worlds" in the juvenile court system stemmed from juvenile courts discarding procedural safeguards available to adults in a criminal prosecution. *Id.* at 556; *Gault*, 387 U.S. at 29, 87 S.Ct. 1428, 18 L.Ed.2d 527. A juvenile like Aalim who is tried in adult court, however, receives all the rights and protections afforded to juvenile offenders in juvenile court, and then some. An adult criminal court protects a juvenile's rights; it does not diminish them.

**{¶ 62}** But even if we were to conclude that mandatory transfer to adult court does deprive a juvenile of a liberty interest, I would nevertheless also conclude that the process and substance of that transfer provide appropriate, predeprivation procedural protections. Because the legislature has exclusive authority to provide for treatment as a juvenile, it "may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved." *Woodard*, 556 F.2d at 785. A juvenile who qualifies for mandatory transfer has the right to a pretransfer hearing at which the state must prove not only that the juvenile falls within the statutory classifications for mandatory transfer but also that probable cause exists to believe that the juvenile committed the charged offense. R.C. 2152.12(A)(1)(b); Juv.R. 30(A). At that hearing, the juvenile has an

unwaivable right to counsel, the right to remain silent, the right to present evidence, the right to cross-examine witnesses, and the right to notice of the charges against him or her. Juv.R. 3(A)(1). In my view, these protections give the juvenile adequate due process prior to a transfer to adult court. Aalim apparently agrees, because he does not even argue that any procedural due process was lacking with respect to the juvenile court's probable-cause hearing.

**{¶ 63}** The majority cites this court's prior recognition that juveniles have a "special status" under Ohio law and that children are constitutionally different from adults for purposes of sentencing in support of its holdings that statutory transfer provisions must account for the differences in children versus adults and that a juvenile court judge must have discretion to determine which children should be treated as adults and which children should not. Majority opinion at ¶ 21, 24-25. But while a majority of this court may prefer to afford juvenile court judges discretion to determine, in all instances, whether a juvenile offender should be treated as an alleged delinquent in juvenile court or as a criminal defendant in adult court, that is an issue for the General Assembly. The Due Process Clause does not invest this court with the power to sit as a super-legislature to second-guess the General Assembly's policy choices. *See Griswold v. Connecticut*, 381 U.S. 479, 482, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

**{¶ 64}** The majority also cites a line of recent Eighth Amendment decisions of the United States Supreme Court that establishes that children are constitutionally different from adults for purposes of sentencing and that youth is a mitigating factor. *See Roper v. Simmons*, 543 U.S. 551, 570-571, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (Eighth and Fourteenth Amendments forbid imposition of death penalty on juvenile offenders); *Graham v. Florida*, 560 U.S. 48, 77-78, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (Eighth Amendment prohibits imposition of life-without-parole sentences on juvenile, nonhomicide offenders); *Miller v. Alabama*, __ U.S. __, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012) (Eighth

Amendment prohibits *mandatory* life-without-parole sentences for juvenile offenders). Fair enough. But the case before us now is not about the propriety of the punishment Aalim may receive. It can't be—Aalim concedes that he may receive a shorter term of confinement in adult court than he would in juvenile court. So the majority's reliance on the federal decisions concerning the Eighth Amendment implications for juvenile sentences is wholly misplaced here.

{¶ 65} The Ohio decisions that the majority cites are no more persuasive on the question before us. In *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 1, this court simply applied *Miller* and held that a common pleas court must consider a juvenile homicide offender's youth as a mitigating factor before imposing a sentence of life without parole. We acknowledged *Miller*'s statement that " 'children are constitutionally different from adults for purposes of sentencing.' " *Id.* at ¶ 12, quoting *Miller* at 2464, citing *Roper* and *Graham*. As in *Roper*, *Graham*, and *Miller*, the issue in *Long* involved the requirement that an adult court consider the youth of the defendant when sentencing a juvenile offender. *Long* had nothing to do with transfer procedures.

{¶ 66} *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, and *In re A.G.*, __ Ohio St.3d __, 2016-Ohio-3306, __ N.E.3d __, concerned juveniles' entitlement to constitutional rights as part of delinquency adjudications in juvenile court. In *A.G.*, the majority held that juveniles are entitled to the same double-jeopardy protections in juvenile court that adults receive. *Id.* at ¶ 9. *C.P.* involved a juvenile who remained in juvenile court as a result of the juvenile court judge's determination that he was amenable to rehabilitation in the juvenile system. *C.P.* at ¶ 84. There, the court held that a procedure that required automatic imposition of adult sanctions—lifetime sex-offender registration and notification requirements—without the participation of the juvenile court judge violated the Eighth Amendment to the United States Constitution and due process. *Id.* at ¶ 1. Unlike in those cases, the issue here does not concern the extent of a juvenile's

procedural rights in the course of a delinquency adjudication because the juvenile court transferred Aalim to adult court, where he will be afforded the full panoply of rights available to adults.

{¶ 67} Finally, the majority in *Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, at ¶ 29, held that the rule announced in *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024—that a constitutionally infirm, uncounseled prior conviction may not be used to increase the degree and the sentence of a later offense—likewise applied to an uncounseled delinquency adjudication. The holding in *Bode* arose out of the juvenile's due-process right to the assistance of counsel during delinquency proceedings. *Bode* at ¶ 13-17. For our purposes, *Bode* does no more than affirm a due-process right to counsel in delinquency proceedings; it offers no authority for prohibiting mandatory transfer under either the United States or Ohio Constitution.

{¶ 68} I agree with the majority that "[a]ll children are entitled to fundamental fairness in the procedures by which they may be transferred out of juvenile court for criminal prosecution." Majority opinion at ¶ 26. In my view, however, the concept of fundamental fairness does not preclude mandatory transfer. Fundamental fairness and the requirements of procedural due process are met when, after a probable-cause hearing, the juvenile court determines that the juvenile qualifies for mandatory transfer pursuant to duly enacted statutory prerequisites and that there is probable cause to believe that the juvenile committed the charged offense. The procedures set out in the mandatory-transfer provisions and in the Juvenile Rules provide the requisite process and afford the juvenile fundamental fairness. I therefore conclude that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) do not violate the rights to due process guaranteed by either the United States or Ohio Constitution.

{¶ 69} Because I conclude that Ohio's mandatory-transfer provisions do not violate due process, I briefly consider—but ultimately reject—Aalim's argument

that they violate equal protection under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution. The standards for determining whether a statute violates equal protection are "essentially the same under the state and federal Constitutions." *State v. Klembus*, 146 Ohio St.3d 84, 2016-Ohio-1092, 51 N.E.3d 641, ¶ 8, citing *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 7.

{¶ 70} A statute that does not implicate a fundamental right or a suspect classification does not violate equal protection if it is rationally related to a legitimate government interest. *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 39, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 15. As stated in my due-process analysis, the mandatory-transfer provisions do not abridge fundamental rights. Nor do they involve a suspect classification; age is not a suspect classification for purposes of equal protection, *State ex rel. Keefe v. Eyrich*, 22 Ohio St.3d 164, 165-166, 489 N.E.2d 259 (1986), citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

{¶ 71} Aalim argues that Ohio's mandatory-transfer provisions irrationally treat children who are 16 or 17 when they commit a category-two offense with a firearm and are subject to mandatory transfer differently from children who are 14 or 15 and who are subject to discretionary transfer. Aalim states that "no ground can be conceived to justify" those age-based distinctions. I disagree.

{¶ 72} We grant substantial deference to the General Assembly when conducting an equal-protection, rational-basis review. *Williams* at ¶ 40. " '[A] legislative choice * * * may be based on rational speculation unsupported by evidence or empirical data,' " *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58, 717 N.E.2d 286 (1999), quoting *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 315,

113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), and the state is not obligated to produce evidence to sustain the rationality of a legislative classification, *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400¸ ¶ 91, citing *Am. Assn. of Univ. Professors* at 58, 60.

**{¶ 73}** The mandatory-transfer provisions are "part of Ohio's response to rising juvenile crime" and "one of the hallmarks of [the General Assembly's] 'get tough' approach." *State v. Hanning*, 89 Ohio St.3d 86, 89, 728 N.E.2d 1059 (2000). I agree with those Ohio appellate courts that have concluded that the General Assembly's decision to single-out older juvenile offenders—who are "potentially more streetwise, hardened, dangerous, and violent"—is rationally related to the legitimate governmental interests in protecting society and reducing violent crimes. *State v. J.T.S.*, 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, ¶ 45, citing *State v. Anderson*, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, and *State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010. I therefore conclude that the mandatory-transfer provisions do not violate equal-protection principles under either the United States or the Ohio Constitution.

**{¶ 74}** For these reasons, I respectfully dissent.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Andrew T. French, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Amanda J. Powell and Charlyn Bohland, Assistant Public Defenders, for appellant.

Rickell L. Howard, Ohio Director of Litigation and Policy, urging reversal for amicus curiae Children's Law Center, Inc.

Maritza S. Nelson, Law Office of Maritza S. Nelson, L.L.C., urging reversal for amici curiae Juvenile Justice Coalition, League of Women Voters of Ohio, and Ohio Association of Child Caring Agencies.

Kimberly P. Jordan, Director, urging reversal for amicus curiae Justice for Children Project, Moritz College of Law Clinical Programs.

D.K. Wehner, urging reversal for amicus curiae Law Office of the Public Defender, Montgomery County, Ohio.

David L. Strait, Assistant Public Defender, urging reversal for amicus curiae Franklin County Public Defender.

Melissa Lindsay, Staff Attorney, urging reversal for amicus curiae Family & Youth Law Center, Capital University Law School.

Dorianne Mason, urging reversal for amicus curiae Ohio Justice & Policy Center.

Michele Temmel, urging reversal for amicus curiae Office of the Hamilton County Public Defender.

Beatrice Jessie Hill, Associate Dean for Academic Affairs and Judge Ben C. Green Professor of Law, Case Western Reserve University School of Law, urging reversal for amicus curiae Schubert Center for Child Studies.

Marsha L. Levick, urging reversal for amicus curiae Juvenile Law Center.

Nadia N. Seeratan, urging reversal for amicus curiae National Juvenile Defender Center.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Stephen P. Carney, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.

_____